IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

JOHN COLLISON                                                                                    PLAINTIFF

v.                                          No. 4:16-CV-00203-JLH-PSH

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                                       DEFENDANT

## RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### REASONING FOR RECOMMENDED DISPOSITION

John Collison applied for social security disability benefits with an alleged disability onset date of January 8, 2013. (R. at 34). After a hearing, the administrative law judge (ALJ) denied his application. (R. at 25). The Appeals Council denied Collison's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Collison has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

**I.      The Commissioner's Decision**

The ALJ found that Collison had the severe impairment of history of a mild L1 compression fracture. (R. at 15). As a result of the impairment, the ALJ determined that Collison had the residual functional capacity (RFC) to perform sedentary work, with the additional limitations that he could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, kneel, crawl, crouch, or balance; and must have the option to sit or stand at will. (R. at 17). The ALJ took testimony from a vocational expert (VE) and determined that the RFC would preclude any of Collison's past relevant work. (R. at 23–24). However, the ALJ found, with VE testimony, that Collison could perform other jobs such as information clerk or telephone solicitor. (R. at 24–25). The ALJ therefore held that Collison was not disabled. (R. at 25).

II.     Summary of Medical Evidence

Collison sought treatment at the University of Arkansas for Medical Sciences (UAMS) on July 20, 2012, presenting with complaints of muscle cramps and vomiting. (R. at 296). He was diagnosed with heat exhaustion and discharged after treatment. (R. at 297–98).

He presented at Vilonia Family Clinic on August 14, 2012 with complaints of abdominal pain and anxiety. (R. at 328). He was diagnosed with depression and prescribed Celexa. (R at 330). He presented again on August 28, 2012 to follow up on his heat exhaustion. (R. at 323). He stated that his depression medication was working but that the dosage may need to be increased because of continuing issues. (R. at 323). On December 17, 2012, he presented for a recheck, where he had multiple complaints regarding continuing symptoms, including chest pain, tender lymph nodes, and not sleeping or eating. (R. at 320). Due to his complaints, his medication was changed from Celexa to Paxil. (R, at 322).

On January 8, 2013, Collison was treated at Conway Regional after a car accident. (R. at 286). He complained of back pain. (R. at 287). X-ray showed a mild L1 compression fracture, and the physician prescribed Percocet. (R. at 288).

Collison presented at UAMS on January 9, 2013 seeking treatment for the same accident. (R. at 306). He complained that his pain had increased since the previous day. (R. at 308).

On March 4, 2013, Collison visited Vilonia Family Clinic complaining of back pain. (R. at 315). He requested pain medication and a referral to a neurologist. (R. at 315). He was referred to Dr. Oberlander. (R. at 318).

Collison visited David Oberlander, M.D. on April 16, 2013, complaining of severe back pain with a radiating component and noting marked spasm in the low back region with great pain while sitting for even brief periods. (R. at 335). Dr. Oberlander noted a broad based, unstable gait and limp. (R. at 336). He prescribed Percocet as needed, Elavil, and Mobic, stating that he would see Collison again a few months or sooner if necessary. (R. at 336–37). On May 16, 2013, Collison again visited Dr. Oberlander with the same condition and results. (R. at 332–34). On July 16, 2013, Dr. Oberlander prescribed Temazepam as needed. (R. at 345). Dr. Oberlander wrote a letter on July 31, 2013, opining that Collison had a worsening and quite unstable gait and generally worsening condition, and that Collison was disabled "from the neurological standpoint." (R. at 350).

On December 15, 2013, Collison visited Baptist Medical Center Heber Springs with complaints of back pain. (R. at 356). He was ordered Norflex and Toradol injections. (R. at 357).

Collison visited Baptist Health Family Clinic Greers Ferry on January 21, 2014 for insomnia and rash. (R. at 363). He received a prescription for trazodone. (R. at 364). Collison visited Dr. Oberlander on March 6, 2014 with no significant changes from his previous visit. (R. at 375–79). He then returned to Baptist Health Family Clinic Greers Ferry on March 14, 2014 with complaints of depression and a cyst above his clavicle. (r. at 366). He was prescribed hydrocodone and continued on trazodone. (R. at 367).

Dr. Oberlander completed a medical assessment on March 15, 2014. (R. at 360–61). In the assessment, Dr. Oberlander opined that Collison could lift/carry up to 15 pounds, could stand/walk for up to four hours per day up to thirty minutes at a time and sit for the same durations. (R. at 360). He opined that Collison could never climb but could often balance, stoop, crouch, kneel, or crawl. (R. at 360–61). Collison visited Dr. Oberlander on April 10, 2014. (R. at 372). Collison's pain and gait had both worsened. (R. at 372). Dr. Oberlander believed Collison to be disabled. (R. at 373).

On April 25, 2014, Collison had a chest CT that revealed no acute cardiopulmonary process or frank adenopathy. (R. at 395). He visited Baptist Health Family Clinic Greers Ferry on May 8, 2014 for sinus symptoms. (R. at 392). On May 13, 2014, it was noted that he tested positive for Rocky Mountain spotted fever, and he presented for rash and migraine headaches. (R. at 389). Lymph nodes had gone down since being treated with doxycycline. (R. at 389). He was prescribed a Medrol dosepak for his rash, told to finish the doxycycline, ordered a Phenergan wrist gel, and prescribed Imitrex for the headaches. (R. at 390–91). On June 3, 2014, he reported that the Imitrex did not help, and he was started on Topamax. (R. at 386–88). He returned on June 27, 2014 with enlarged lymph nodes, and it was noted that he had a questionable history of

tick fever. (R. at 401). He was restarted on doxycycline for 10 days and referred for the enlarged lymph nodes. (R. at 402).

Collison once again visited Dr. Oberlander on July 10, 2014, where Dr. Oberlander noted the same history and continued complaints of back pain. (R. at 405). Dr. Oberlander continued Collison's prior medications. (R. at 407).k

III. Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Collison argues that the ALJ erred in determining his RFC by failing to comply with the requirements of Social Security Rulings 96-9p and 83-12 and failing to include all of his limitations in the RFC. He further argues that the ALJ did not properly weigh the opinion of Dr. Oberlander. He also contends that the ALJ did not perform a proper credibility analysis.

### a. The RFC Determination

Collison first argues that the ALJ improperly found that he could perform sedentary work with the option to sit or stand at will. Collison asserts that this limitation does not comply with SSR 96-9p, which requires that the ALJ specify the frequency of the need to alternate sitting and standing and the length of time needed to stand.

This argument fails. While SSR 96-9p does require that the frequency of the alternation be specified, it does not require that the ALJ necessarily assign a number of

minutes for sitting and standing. *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185, *7. It is clear that a need to alternate sitting and standing "at will" would require work in which the length of time sitting or standing would be of no consequence. If a job required that a worker maintain a particular position for even a few minutes at a time, a worker who must alternate at will would be unable to perform that job.

Collison also maintains that the RFC failed to comply with SSR 83-12, which notes that most unskilled labor does not allow a worker to sit or stand at will. *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work*, SSR 83-12 (S.S.A. 1983), 1983 WL 31253, *4. This argument is also unavailing, as the ALJ in this case consulted with a VE, who identified jobs that would allow a worker to sit or stand at will.

Collison also insists that the ALJ failed to include all of his limitations in the hypothetical question posed to the VE. However, Collison fails to identify—and the evidence does not reveal—any specific limitation that the ALJ excluded. The ALJ's question to the VE included all of the limitations included in the RFC. (R. at 60–63). As Collison has failed to articulate or support any additional limitations, the undersigned cannot agree that the ALJ failed to include all of Collison's limitations.

### b. The Opinion Evidence

Collison maintains that the ALJ did not properly weigh the opinion of Dr. Oberlander. However, Collison's contention that the ALJ disregarded Dr. Oberlander's opinion is not supported by the ALJ's decision. The ALJ specifically noted that Dr.

Oberlander's opinion regarding Collison's functional limitations was "considered and found to be persuasive." (R. at 23).

Collison's argument focuses on Dr. Oberlander limiting him to sitting for four hours per day, whereas the RFC limits him to sitting for six hours per day. The Court notes, however, that the RFC is largely significant with Dr. Oberlander's limitations. In fact, in some respects, the RFC has greater limitations than Dr. Oberlander would have imposed. For example, the RFC limits Collison to sedentary work, which requires a worker to lift no more than 10 pounds. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Dr. Oberlander opined that Collison could lift up to 15 pounds. (R. at 360). Dr. Oberlander also opined that Collison could stand/walk or sit for 30 minutes without interruption. (R. at 360). The RFC, however, required work that would allow Collison to sit and stand at will. As noted above, this is more limiting than a set durational requirement expressed as a number of minutes.

Additionally, the ALJ was not required to adopt all of Dr. Oberlander's limitations. The distinction between the RFC's limitation of sitting for six hours per day and the treating doctor's limitation of four hours per day is largely inconsequential because the RFC provides that Collison must have the option to sit or stand at will.

Finally, while Dr. Oberlander opined that Collison is disabled, that question is reserved to the Commissioner, and an opinion that a claimant is disabled is not entitled to significant weight. *Brown v. Astrue,* 611 F.3d 941, 952 (8th Cir. 2010).

Collison has not demonstrated that the ALJ disregarded Dr. Oberlander's opinion. There is no error.

### c. The Credibility Determination

Finally, Collison argues that the ALJ failed to perform a proper credibility analysis and made only a single conclusory statement regarding his credibility.

The Court defers to the ALJ's credibility determination when it is supported by good reason and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). The ALJ must consider "(1) the claimant's daily activities; (2) the duration and intensity of the pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions." *Miller v. Sullivan*, 953 F,2d 417, 420 (8th Cir. 1992) (*citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ need not specifically address each factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ did not simply state that he found Collison to be not entirely credible based on a single factor. The ALJ considered Collison's treatment history that was not consistent with his subjective complaints, including the frequency of treatment, medication, the finding of a mild compression fracture, and a lack of surgical intervention. Furthermore, the medical evidence of record—including the opinion of Dr. Oberlander—supports the RFC assigned by the ALJ. The ALJ's credibility analysis was sufficient.

## IV.   Recommended Disposition

The ALJ properly formulated the RFC, properly weighed the opinion evidence, and performed a proper credibility analysis. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 4th day of April 2017.

                                                         _____
                                                         PATRICIA S. HARRIS
                                                         UNITED STATES MAGISTRATE JUDGE